Case No. 17-5333 Bobby Gibson v. USA Argument not to exceed 15 minutes per side Mr. Paylor you may proceed for the appellant Thank you. May it please the court, counsel, the judge and I would like to reserve five minutes for rebuttal time. My name is Tyrone Paylor. I'm an assistant federal defender of the Westman District of Tennessee. I represent Bobby Joe Gibson. In 1998, Mr. Gibson was sentenced under the mandatory guidelines structure of sentencing guidelines to a sentence of nearly 40 years as a career offender. Since that time, the Supreme Court issued a decision in the United States v. Johnson in 2015 that held that the residual cost of the former career criminal statute was unconstitutional. That residual cost is the same residual cost that's used in the guideline structure and was used in the guideline structure back in 1998 when Mr. Gibson was sentenced as a career offender. The issue we have before the court is whether or not the residual cost contained in the guidelines is subject to an attack for vagueness. Mr. Paylor, I think that's a very interesting issue, but I don't see how, given the Raybond decision, I don't see how it would be reached. How is this case different? I understand this court's ruling in Raybond. I would point to the language contained in Paulack. I would submit to the court that the Sixth Circuit got it right as it relates to mandatory guidelines in Paulack when that panel held that the guidelines at that time, advisories and mandatory, were subject to vagueness attacks. Since that decision, Beckles has come down and Beckles addressed the issue of the advisory guideline structure. To the extent that Beckles addressed the advisory guidelines and eliminated the language or made that law in Paulack as it relates to the advisory guidelines, what Paulack addressed as it relates to the mandatory guidelines remains good law because we believe that the Sixth Circuit got it right and that they are subject to vagueness attacks. If this was a direct review case, I mean, we might be at liberty to consider that, but the problem is here in 2255, you have a timeliness issue as the court in Raybond understood it, and there's nothing that Paulack can do to solve that. I understand that, Your Honor, and it's our position that Johnson is that Supreme Court case that gave that right to defendants such as Mr. Gibson to challenge that in a timely fashion because that case addressed the On Career Criminals Act, which has been interpreted over the years so intertwined with the residual clause under the Island Provision to where you can't carve them out. But, I mean, wasn't that true in Raybond as well? I guess, you know, if we're writing an opinion, how do we lawfully say that Raybond is fine this year? I mean, it's a tough, real tough situation. It is. It's very tough, and I've spent the last, you know, three weeks to a month or so when you invited us up for an argument, scratching my head as to what it is that you guys want. How can I help? But, with the restrictions being what they are, our position remains for litigation. I just want to make a comment about Paulack because I was on that panel, but I didn't write it. You said we were referring to the mandatory guidelines, and that puzzled me because Paulack, like Johnson, was a direct criminal appeal on something that had happened pretty recently, wasn't it? So, I didn't know how we would be addressing the mandatory guidelines with Paulack. There was a line in Paulack that indicated that whether or not the guidelines were advisable or mandatory, that they were subject to a dangerous attack. Okay, now, I found out that that wasn't the case that was before us. The decision that we made in Paulack effectively was overruled by faculty. So, the fact that we had a sentence, that sentence is our flaw. I want to make sure that that was— That's right. When I started looking for it, that was the only sentence I could find. It was. Now, I'm going to ask your adversary this as well, that your problem rose out of that. That is, Johnson was a direct criminal appeal, which allowed the Supreme Court to rule on vagueness, which allowed the Supreme Court to make it retroactive, which then let everybody in on retroactivity. In your client's case and people like him, there's no easy way for the court or a court to rule on the pre-Booker guidelines because there are no current sentences. If there were somebody anywhere in the country that had a direct appeal of a pre-Booker sentence, then you could get an answer, then you could get it retroactive. But in the absence of that, and I'm going to ask you again, your adversary, is there any such person, or could there be? Okay. Not to my knowledge. I don't think it's possible. But I will say— And if it's not possible, you just lose. But I will say that that was addressed in the advisory guidelines, that that could be interpreted as an interpretation of Johnson. You did have a citation, or I know there's another case of the same lawyers, with Judge Daniels' decision in Colorado for a Parks case. Do you know anything about what has become of that since? Was he resentenced? Is there an appeal? Does Chris stay? Anything of that sort? I'm not sure, Your Honor. I didn't follow up with the Parks case. The Supreme Court could always take grave on cert and then kind of do what Chief Justice Marshall did with Marbury and sort of change the order of things a little bit. You know, reach the constitutional question, holding, you know, everything, and then I hope—but, you know, we can't help you here. It is our hope that this panel decides— This is going to be like water trying to get through a crack somewhere. Easy. Is there a cert petition in Raybond? I believe so. I think there is. Thank you, sir. Appreciate it. Thanks for having me. May it please the Court, Kevin Ritz of the United States. These two defendants, and I am assuming we're considering both of these defendants, I'm sorry, Mr. Walker and Mr. Gibson, are similarly situated. We've provided a menu of several options for each of these defendants. Reasons for this Court to affirm four of those reasons are the same for both defendants, and one of those four is timeliness. We have suggested in our EHA letters and in our briefs that timeliness is the easiest and most straightforward way to affirm in this case because, as Judge Kettler pointed out, of the Raybond decision. Raybond controls here. These motions were untimely. Johnson is not the rule that's being relied on. It's an as-yet-announced hypothetical rule that maybe someday could be announced by the Supreme Court. To anticipate what Judge Boggs said he was going to ask me, it is my understanding that there's a cert petition in Raybond. The Fourth Circuit agreed with this Court's holding in Raybond in a case in Brown. There was a First Circuit decision that expressed some skepticism about both of those decisions on this timeliness issue. So, in other words, it is possible that could bubble up to the Supreme Court. Judge Kettler, just with respect to timeliness, help me here. There's a lot of head-scratching in this. Usually, when you say something is untimely, you say, well, they should have filed by X date. In your timeliness argument, what is the X date they should have filed by? When the judgment became final, so— In their own— In their own cases, so that's 2000 and 2001. Correct. So in order to do that, they would have had to anticipate an argument, which at that time was not good law. But we do hold people to that. So they would have had to say, we think that these mandatory guidelines are subject to vagueness challenges, that they are vague. And that's the ballpark. And once that's over, they lose. And you would then say they can only bring a 2255 when you in fact have law. And since they don't have it yet, so going back then to my question of could they ever, isn't part of the— Johnson was able to raise this because he was a current member of the field. Right. Is there anybody who could raise this free booker argument? Had it still applied, for example, on probation violations? For example, you were sentenced before, but now you're being thrown back for a probation violation? I mean, how many—or is the answer you lose? I don't think in the supervised release situation that would— Oh, you didn't go back. Yeah, I don't think you would do that. The answer is you lose, until and unless the Supreme Court says that there is a newly recognized rule made retroactive by the Supreme Court. And that's what 2255, F3, tells us. And again, it is possible that a very long or a board will drown those cases I just mentioned. So they would have to say, contrary to what everybody else is saying, that Johnson was a new rule made retroactive that covers this situation. Correct. Well, and I guess that would be a problem in and of itself for those people who didn't file within the one year of Johnson. And that's—the new rule that would be articulated would restart— That's a separate timeline. And just—that's why the Supreme Court accelerated the Welch timeline to make sure that they decided that case and allowed the ACCA defendants to bring those claims within the one year of Johnson. But it would be—the trigger starts at that newly recognized rule. There is no newly recognized rule. Well, but in principle, from what you said there, in principle, in Raybon or some future case, they could announce that we now decide that it covers—that the rule is different for pre-Booker. And then a year later they could say, now we're going to make it retroactive, and that would trigger the one year. It's possible. Yes. Yes, Your Honor. Just a short answer. The F3 actually says Wright. Correct. And so at what level of generality do we determine the Wright recognize? Your Honor, we've analogized—I mean, is it your last name is Johnson?  I do, I think. And whatever level of generality—it's not at a level that encompasses the universal claims that Mr. Gibson and Mr. Walker are in. Guidelines challenges—when you're saying a guidelines provision is vague, that's a different claim than saying a statute that sets the statutory down. Let's say, just hypothetically, the Supreme Court, in a case that comes from the states as a criminal case, finds under the due process clause of the 14th Amendment that some Wright existed, Your Honor. Okay. And then federal criminal defendants whose judgments became final longer than a year ago—let's say the court said this thing's retroactive. Now, the federal criminal defendants want to file 2255 saying my rights of trial, due process rights, were violated. I mean, would we say, well, you have to wait until the Supreme Court gets a Fifth Amendment due process case. You can't rely upon the 14th. The state. Yeah. I mean, you know, so would we sit around and wait for that, even though somebody's rights would seem nuclear? Your Honor, that would seem to be a closer call. So what standard do we use for determining the level of generality to define a right under that theory? Your Honor, I think it would depend on the nature of the claim. I mean, when you were kind of coming up with that hypothetical, I'll say, you know— The question is, there's no reason to distinguish it. And that goes to the merits here, you know. It does. And you can say, well, let's cut to the merits. No reason to distinguish. Same thing. Same right. Here we go. Right. Timeliness and retroactivity. I would suppose you don't think that's the answer. No, I don't. I mean, in the sentencing context, there is a difference. Obviously, that animates our argument on timeliness, on retroactivity, and on the merits. There's a difference between statutory boundaries and guidelines, even when the guidelines were mandatory. Those are tough issues. And the retroactivity question is a tough issue. Beckles dodged that question, obviously, and that was something that they didn't reach. And the question of whether Beckles extends to mandatory guidelines claims is a tough question. No court appeals to our knowledge as ruled since Beckles on that question. But the timeliness at the end of the day, because of this Court's decision to bring it on, that controls this case. I felt that this Court, a few weeks ago, affirmed in an unpublished order on the same basis and the same type of claim. I did want to address— What were you referring to? Was that Kraft or something? It was Chubb was the name of that case, early January. And, Your Honor, Judge Boggs asked about Parks, which was the case that was cited in the 28-J letter. The United States did not appeal in that case. I don't have further information as to why. It almost seems more like a ripeness issue than a timeliness. It's like your 2255 claim isn't right yet because that fight hasn't been read. Your Honor, to go to Judge Boggs' point about the oddness of— It's untimely because you filed too early, basically, really. Right, right, and I understand that. I guess I would push back a little bit on this notion that the equities are solely in the favor of the defendants in these cases. The reason is because 2255 is all about preserving the finality of criminal judgments. At some point, they're really final. They're really final, and you don't—the law changes all the time. We have a document in the Western District of Tennessee of over 300 pending 2255 right now. And we see claims that span the gamut that a lot of the law changed. The law changed on this particular sentencing outline provision or somewhere else. And it is not unusual for these claims to be denied on an onus basis, on the basis of procedural default. We've also raised here on retroactivity basis. And that is how this system is set up. And because of this court's—again, because of the court's decision in Raybon, that's the most straightforward way to dispose of these cases. I would like to talk briefly about the other—the unique reason to each of these defendants, if I may. And that is for Mr. Walker, this is a success of 2255. It's even more final in the successive context. There's a higher burden you have to reach in gatekeeping standard. The same reasoning that animated Raybon actually applies in that context. There's no new rule of constitutional law made retroactive by the Supreme Court. And he—this court allowed Mr. Walker to pursue his success in 2255, but that was just a kind of facial determination that he had some sort of potential claim. To actually give him relief, this court would have to determine that he met that 2255 gatekeeping standard substantively. And he hasn't, for the same reasons set out in Raybon. And now Mr. Gibson, today, he continues to rely on these residual clause pardons. And if he's relying on the residual—on a challenge to the residual clause, Mr. Gibson, he has to show for the respondent that he's the attacker of the sentence. He has to show that he was sentenced under the residual clause. And we've made that very fundamental point in our brief that it doesn't really look like he was. And, in fact, he was convicted of perjury of eight residents, twice. And everything about the record indicates that he was sentenced under the enumerated clause of the guidelines. So all of this discussion of jumps and heckles, those types of things, are beside the point. I'm happy to discuss more on the retroactivity question for our view of why heckles does extend to mandatory guidelines claims. Questions? Yes. Thank you. I guess there's only really one point of revote that I'd like to make to the panel. And that's regarding Mr. Gibson's underlying offenses as it relates to him being perjured. As we've indicated in our reply brief, Mr. Gibson, it appears that the attempted burglaries were residual clause convictions as outlined in our brief. I don't want to be the dead horse, I think. Well, I can at least give you your reason in one sentence as to why it was residual rather than enumerated. And I know we've done a lot of stuff about burglaries instead of notarized. How does his argument fit into that? These were Arizona convictions for attempted burglary in United States v. Kilts, a 1993 case interpreting Arizona's burglary statute. It's indicated that it was categorically a crime of violence because it did not actually expose a person to serious potential risks of physical injury. I'm sorry, are you saying it was or was not a crime of violence? It was a categorically a crime of violence because of the residual clause language not being enumerated as risks. Is that a Ninth Circuit case? It's a Ninth Circuit case. Thank you very much. The case is submitted, I think, technically, we only called Gibson, your son-in-law. All right, all right. In that case, we'll leave both Gibson and Walker to be submitted. And the argument is concluded. Thank you both for very good arguments. There actually being no further cases to be argued or maybe adjourned.